UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RASHANONDA PERKINS, on behalf of J.P.,

                Plaintiff,

                V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**DECISION AND ORDER**

12-CV-0073 (VEB)

---

## I. INTRODUCTION

In January of 2010, Plaintiff Rashanonda Perkins filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her son, J.P. ("Claimant"),[1] alleging disability due to language delays and a learning disorder. The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, Olinsky Law Group, Howard D. Olinsky, Esq. and Brandon W. Sawyer, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).  (Docket No. 16).   On October 31, 2012, the parties, by and through their respective counsel of record, consented to the jurisdiction of a United States Magistrate

---

[1] J.P. is a minor child.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" in this Decision and Order.

Judge pursuant to 28 U.S.C. § 636 (c) and Rule 73 of the Federal Rules of Civil Procedure. (Docket No. 17).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff is the mother and guardian of Claimant, a minor child. On January 14, 2010, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning January 1, 2010. (T at 153, 171).[2] The application was denied initially. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). On June 22, 2011, a hearing was held in Syracuse, New York before ALJ Susan Wakshul. (T at 41). Plaintiff and Claimant appeared at the hearing with an attorney and testified.[3] (T at 49-72).

On July 15, 2011, ALJ Wakshul issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act. (T at 24-37). The ALJ's decision became the Commissioner's final decision on November 29, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On January 17, 2012, Plaintiff, acting on Claimant's behalf and with counsel, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). The Commissioner interposed an Answer on May 21, 2012. (Docket No. 9). Plaintiff filed a supporting Brief on July 2, 2012. (Docket No. 13). The Commissioner filed a Brief in opposition on September 13, 2012. (Docket No.

---

[2] Citations to "T" refer to the Administrative Transcript. (Docket No. 10)

[3] The ALJ presided from Baltimore, Maryland via videoconference. (T at 41).

15). As noted above, the parties consented to the jurisdiction of this Court on October 31, 2012. (Docket No. 17).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for the calculation of benefits.

### III. DISCUSSION

**A.  Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.     Analysis**

    **1.     Commissioner's Decision**

The ALJ noted that Claimant was born on February 23, 2002, and was therefore a "school-age child," as defined pursuant to 20 CFR § 416.926a(g)(2), on January 14, 2010 (the date the application for benefits was filed) and as of July 15, 2011 (the date of the ALJ's decision). (T at 27). The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. She further determined that Claimant had language delays and a learning disorder, which the ALJ recognized as "severe" impairments under the Social Security Act. (T at 27).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 27). The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 27-31).

As such, the ALJ found that Claimant had not been disabled, as defined under the Social Security Act, from the date the application for benefits was filed to the date of the ALJ's decision. (T at 36-37). As noted above, the ALJ's decision became the Commissioner's final decision on November 29, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

    **2.     Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed. In support of this position, she offers two (2) principal arguments. First, Plaintiff challenges the ALJ's

functional equivalence assessment.  Second, Plaintiff contends that the ALJ did not properly evaluate her credibility.  This Court will address both arguments in turn.

### a. Functional Equivalence

If the claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing.  Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ determined that Claimant had: (1) a marked limitation in acquiring and using information; (2) less than marked limitation with regard to attending to and completing tasks; (3) no limitation with respect to interacting with and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) no limitation with regard to health and physical well-being. (T at 31-36).

Plaintiff argues that the ALJ should have found an extreme limitation with regard to acquiring and using information, at least a marked limitation in terms of attending to and completing tasks, and at least a marked limitation with respect to interacting with and relating to others.[4]

### i. Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned.  20 C.F.R. § 416.926a(g).  A school-age

---

[4]Plaintiff does not challenge the ALJ's findings with regard to the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. (Docket No. 15, at p. 4 n.1).

child (*i.e.* at least six, younger than twelve) should be able to read, write, perform math, and discuss history and science. The child should be able to demonstrate these skills both in academic situations and in daily living. 20 C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and his difficulty explaining what he or she means. 20 C.F.R. § 416.926a(g)(3).

Mallory Knapp, Claimant's second grade teacher, reported that Claimant has an "obvious problem" comprehending oral instructions and providing organized oral explanations and adequate descriptions. (T at 220-21). She concluded that he has a "serious problem" understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, learning new materials, and recalling and applying previously learned material. (T at 220-21). Ms. Knapp indicated a "very serious problem" with regard to expressing ideas in written form and applying problem-solving skills in class discussions. (T at 221). She reported that Claimant "struggles doing work independently" and needs 1:1 support to complete most assignments. (T at 221).

Dr. Jeanne A. Shapiro, a consultative psychiatric examiner, assessed a reading disorder and indicated that Claimant appeared to be incapable of reading at an age appropriate level. (T at 256). She opined that Claimant would "have difficulty learning at his level of cognitive functioning due to a reading disorder." (T at 256).

As noted above, the ALJ concluded that Claimant had a marked limitation with regard to this domain. (T at 32). Plaintiff contends that the ALJ erred and should have found Claimant's limitation in this domain to be "extreme". Per the Social Security Regulations, a finding of "extreme" limitation is warranted when the impairment "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a (e)(3). A "marked" limitation is appropriate when "the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

This Court finds that the ALJ's assessment of a marked, as opposed to extreme, limitation with regard to this domain was supported by substantial evidence. Although a reasonable person might review the evidence and assess an extreme impairment as to this domain (particularly given Claimant's difficulties reading), this Court cannot impose its own views where, as here, the Commissioner's judgment is based upon adequate findings supported by the evidence. See White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)).

Ms. Knapp, Claimant's teacher did report "very serious" problems as to this domain, but only in two of the ten areas of assessment. (T at 220-21). Claimant only had a "slight" problem understanding and participating in class discussions and an "obvious" (i.e. less than serious) problem comprehending oral instructions and providing organized oral explanations and adequate descriptions. (T at 220-21). Dr. Shapiro assessed that Claimant could follow and understand age appropriate directions, as long as he did not have to read

10

them. (T at 256). Claimant's full scale IQ was 91, which places him in the average range of intelligence. (T at 254). Dr. Shapiro noted that Claimant appears to be capable of performing arithmetic and writing at slightly below an age appropriate level. (T at 256). Two non-examining State Agency medical review consultants[5] reviewed the record and assessed a marked (as opposed to extreme) limitation with regard to this domain. (T at 269).

As noted above, the question is whether substantial evidence supports the ALJ's finding of a "marked" limitation. In light of the evidence outlined above, this Court finds the ALJ's decision to rate Claimant's limitation in this domain "marked" as opposed to "extreme" supported by substantial evidence.

### ii.     Attending and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well he or she can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when

---

[5]The consultants are identified in the record as "K. Prowda" (psychiatry) and "J. Weir" (speech language pathology). (T at 268).

appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

In the present case, the ALJ concluded that Claimant had less than a marked limitation with regard to this domain. In support of this finding, the ALJ noted that Claimant (1) was "attentive and appropriately responsive" during consultative evaluations, (2) had not been diagnosed with an attention disorder or treated with medication to address concentration or focus, and (3) worked well in small groups and when redirected with prompting by adults. (T at 33). Dr. Shapiro, the consultative examiner, opined that Claimant could attend to age appropriate directions and complete age appropriate tasks. (T at 33, 256). The State Agency review consultants assessed no limitation with regard to this domain. (T at 269).

This Court finds that the ALJ's assessment with regard to this domain was not supported by substantial evidence. As outlined below, the educational evidence demonstrated conclusively that Claimant had very serious difficulties attending to and completing tasks and required significant support to perform such tasks. This evidence establishes a finding of at least a marked impairment with regard to this domain.

The ALJ recognized that Claimant's attention was "fleeting," but assessed less than marked limitation because Claimant responded to adult supervision and redirection. (T at 29). The ALJ found that the assessment of Ms. Knapp (Claimant's second grade teacher) was entitled to "great weight," except that she found Ms. Knapp's conclusions with regard

to the domain of attending and completing tasks inconsistent with evidence indicating that Claimant was "cooperative, attentive, and responsive." (T at 31). In particular, the ALJ referenced Dr. Shapiro's finding that Claimant could attend to age appropriate directions and complete age appropriate tasks. (T at 33, 256).

However, aside from Dr. Shapiro's assessment (which was based on a single examination), the evidence demonstrated that Claimant had serious difficulties in this domain, and could only attend to tasks and maintain attention when given significant support.

Mrs. Keener, Claimant's second grade reading specialist, cited "areas of concern" with regard to Claimant's ability to work without teacher assistance and pay attention to a person speaking. (T at 210). Ms. Knapp assessed "very serious" problems carrying out multi-step directions, completing class/homework assignments, and completing work accurately without careless mistakes. (T at 221). She found "obvious" problems focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, and working at a reasonable pace/finishing on time. (T at 221-22). Ms. Knapp explained that Claimant "takes an extremely long time to complete tasks, even with teacher or student assistance" and reported that Claimant had "never turned in a homework assignment." (T at 222). Claimant's Individualized Education Program ("IEP") for the 2010-11 school year provided that Claimant's tests would be administered in a location with minimal distractions and required that he be given extended time. (T at 215). The IEP noted that Claimant "need[ed] a great deal of support in the classroom" and "need[ed] to be in close proximity to the teacher." (T at 215).

The "Commissioner's regulations require the ALJ to consider the effects of a

structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c);[6] see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).

Here, Ms. Knapp reported that Claimant needed an "extremely long time" to complete tasks "even with teacher or student assistance." (T at 222). She also noted "obvious" and "very serious" problems in this domain notwithstanding the direct support provided to Claimant. (T at 221). This is plainly indicative of a marked limitation.

Contrary to the ALJ's finding, the fact that Claimant can accomplish some tasks after an "extremely long time" and with significant support in a structured setting is not evidence of a less than marked limitation; rather, the need for such support in that setting indicates the presence of a marked limitation. Indeed, the fact that Claimant has never completed a homework assignment is persuasive evidence of a marked limitation. (T at 222). When asked to complete a task without intensive support and outside of the structured school setting, Claimant apparently cannot attend to and/or complete the task.

---

[6]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

Accordingly, this Court finds that the ALJ's conclusion that Claimant had a less than marked limitation in the domain of attending and completing tasks is not supported by substantial evidence.

### iii.     Interacting and Relating with Others

With regard to the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

A school-age child is expected to develop more lasting friendships with children who are his or her own age. The child should begin to understand how to work in groups to create projects and solve problems. The child should demonstrate an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

Examples of limitation functioning in this domain are: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, and difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3).

The ALJ found no limitation with respect to Claimant's ability to interact and relate with others. (T at 33-34). In particular, the ALJ noted that Claimant "does not have behavioral problems, generally gets along with others, and has many friends." (T at 34).

Plaintiff argues that Claimant's limitation as to this domain is marked or extreme. She points to Claimant's 2010-11 IEP, which indicated that his speech and language delays made it "difficult for him to participate in classroom discussion and acquire steady friendships." (T at 215). The 2011-12 IEP reported that Claimant's delayed expressive speech made it "difficult for him to effectively communicate to develop friends." (T at 236). Patricia Munski, a consultative speech language pathologist, diagnosed a mild receptive language delay and severe expressive language delay. (T at 260).

Although this Court is not inclined to endorse the ALJ's finding of "no limitation" as to this domain, Plaintiff's argument that Claimant has a marked or extreme limitation is not supported by the record. Ms. Knapp generally found no problems with regard to Claimant's functioning in this domain (she assessed "no limitation" as to playing cooperatively, making and keeping friends, seeking attention and expressing anger appropriately, asking permission appropriately and following rules, and taking turns in conversation). (T at 222-23). Ms. Knapp reported only a "slight" problem relating experiences and telling stories, introducing and maintaining relevant and appropriate topics of conversation, interpreting the meanings of body language, and using adequate vocabulary and grammar. (T at 222). Mrs. Keener, the reading specialist, indicated that Claimant "works very well in a small group." (T at 210).

Plaintiff testified that Claimant "gets along fine" with other children. (T at 59). Claimant's friends visit his home and play in the backyard. (T at 59). Dr. Shapiro opined that Claimant appeared to be capable of interacting adequately with peers and adults. (T at 256). The State Agency review consultants assessed no limitations as to this domain. (T at 270).

Accordingly, the evidence indicates that Claimant has a less than marked limitation in the domain of interacting and relating with others, as such, any error in the ALJ's finding that Claimant had no limitation was harmless.

### b. Credibility

Plaintiff also contends that the ALJ did not properly assess the credibility of the testimony she offered at the hearing. In light of this Court's findings above and decision to remand the case for calculation of benefits (explained below), it is not necessary to resolve that issue.

### 3. Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay. Specifically, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least

two of the domains identified under 20 C.F.R. § 416.926a. The Commissioner found a marked limitation in the domain of acquiring and using information. (T at 31-32). For the reasons set forth above, this Court finds that the evidence compels but one conclusion under the substantial evidence standard, namely, that Claimant also has a marked limitation with respect to attending and completing tasks. Ms. Knapp, whose opinion was generally afforded "great weight" by the ALJ, reported that Claimant needed an "extremely long time" to complete tasks "even with teacher or student assistance." (T at 222). She also noted "obvious" and "very serious" problems in this domain notwithstanding the direct support provided to Claimant. (T at 221). Ms. Keener also noted serious concerns in this domain (T at 210) and Claimant's IEP recognized that he needed additional time for tests and a testing environment with minimal distractions.

Plaintiff's application for benefits on behalf of Claimant had been pending for more than two years when this case was filed. Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." Nieves ex rel. Nieves v. Barnhart, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing Maldonado v. Apfel, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." Molina v. Barnhart, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

Accordingly, further delay is not warranted and a remand is ordered solely for the calculation of benefits.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is GRANTED, that the Commissioner's Motion for Judgment on the Pleadings is DENIED, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for calculation of benefits.

## V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED; and it is further;

ORDERED, that this case is remanded to the Commissioner of Social Security for the calculation of benefits.

Victor E. Bianchini
United States Magistrate Judge

Dated: November 28, 2012

Syracuse, New York